IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-05046-01-CR-SW-RK |
| | ) | |
| | ) | |
| JEREMIAH SHANE TALBOTT, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On December 29, 2015, Magistrate Judge David P. Rush issued his Report and Recommendation (doc. 37) concluding that the Court should deny Defendant Jeremiah Shane Talbott's Motion to Suppress (doc. 27). Defendant Talbott objects to the Report, asserting that the "inevitable discovery" exception to the warrant requirement is not properly applied to the record in this case. (Doc. 38.)

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted an independent review of Judge Rush's Report (doc. 27), the parties' filings before and after the Report, as well as the transcript of the evidentiary hearing on Defendant Talbott's motion held before Judge Rush on November 17, 2015. The Court concurs in Judge Rush's findings of fact and recommendation to deny Defendant's Motion to Suppress. However, the Court arrives at the same conclusion that suppression is not warranted, without addressing the issue of whether to extend the inevitable discovery exception to the facts of this case. Rather, with respect to whether the seizure of Defendant's phone was in violation of the Fourth Amendment, the Court diverges from the Report.

Based on the factual findings in the Report, which the Court adopts in full, together with the additional factual findings set forth below, the Court concludes that Defendant's voluntary consent to search the phone was an intervening independent act of free will that effectively purged the taint from any invalid seizure of the phone. The Court therefore assumes without deciding that the initial seizure of the phone was invalid.

## Discussion

### A. The Seizure of Defendant's Cell Phone

Whether there is an intervening voluntary consent to search that purges the taint of a Fourth Amendment violation is a two-part inquiry. *See United States v. Becker*, 333 F.3d 858, 861-62 (8th Cir. 2003). The Court must first inquire whether the consent was voluntary. *Id.* The Court further considers whether the consent was "sufficiently an act of free will sufficient to purge the primary taint" of the Fourth Amendment violation. *United States v. Grajeda*, 497 F.3d 879, 882 (8th Cir. 2007). The Court concludes the facts in this case satisfy both inquiries.

As to the voluntariness inquiry, although Judge Rush does not make an express finding that Defendant's consent to search was voluntary, that conclusion is evident in the Report and consistent with the record in this case. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973) ("[v]oluntariness is a question of fact to be determined from all the circumstances"). Relevant factors when assessing the voluntariness of Defendant's consent include the following: (1) his age; (2) whether he was intoxicated or under the influence of drugs when consenting; (3) whether he consented after being informed of his right to withhold consent or of his *Miranda* rights; and, (4) an examination of the environment in which consent was given. *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

Although Defendant's argues his phone was brought out during the interview as a coercive tactic to facilitate both law enforcement's interrogation and the obtaining of consent, there is nothing in the record to suggest Defendant's consent was not given voluntarily. Defendant was thirty-seven years old, and the record does not indicate he was under the influence of drugs or alcohol at the time he gave consent. The encounter where consent was given took place during the course of TFO Williams' interview of Defendant at the Joplin Police Department. Defendant came to the Joplin Police Department on his own accord after TFO Williams made it known that he would like to talk with him. Further, upon meeting TFO Williams at the police department, Defendant was informed he was not under arrest and was advised of his *Miranda* rights. After waiving his *Miranda* rights and prior to giving consent, Defendant admitted to sending emails from his phone to the account TFO Williams had used to pose as a fourteen-year-old Willis, which led to the charge in this case. In sum, the record simply does not support that Defendant's consent to search was not voluntary.

Regarding the second inquiry, additional considerations in determining whether voluntary consent purged the taint of the assumed invalid seizure include: "whether [Defendant] understood his right to withhold consent, the temporal proximity of his consent and the prior Fourth Amendment violation, the presence of intervening circumstances, and, particularly, the purpose of any flagrancy of the official misconduct." *United States v. McGill*, 125 F.3d 642, 644 (8th Cir. 1997) (internal quotation marks omitted) (quoting *Brown v. Illinois*, 422 U.S. 590, 604 (1975)).

Here, as stated in the Report's factual findings, Defendant completed a consent-to-search form giving written permission to search his phone during the course of his interview with TFO Williams. Prior to signing the consent-to-search form, Defendant had been advised of his *Miranda* rights, and he had agreed to waive the same. Additionally, at the hearing on the subject motion, TFO Williams testified he advised Defendant that "at any time that he wanted to revoke his consent, he could, and I'd provided him with my card so he's have a way to get a hold of me" before the actual search. (Doc. 36 at 20, ¶¶ 18-20.) There is nothing in the record indicating Defendant attempted to revoke his consent.

Turning to the temporal proximity of the assumed invalid seizure and Defendant's consent to search, the seizure took place on the same day, and hours after the consent. Defendant's phone was seized by virtue of K.B. delivering it to TFO Williams on the morning of August 20, 2014. Defendant's interview with TFO Williams, during which the consent was given, occurred at 1:30 p.m. later that same day. The passage of hours, based on these facts, weighs in favor of finding Defendant's consent was an act of free will. *See Becker*, 333 F.3d at 862 (nineteen minutes between the unlawful detention and the defendant's consent found not to be too close in time as to weigh against the voluntariness of consent) (citing *United States v. Ramos*, 42 F.3d 1160, 1164 (8th Cir. 1994) (finding voluntary consent despite the fact that the request for consent followed immediately upon the Fourth Amendment violation)).

As to intervening circumstances in this case, Defendant had been advised he could revoke his consent. *See United States v. Moreno*, 280 F.3d 898, 901 (8th Cir. 2002) (where the officer advised the defendant that he had the right to refuse consent to search, such an intervening circumstance supports the voluntariness of the defendant's consent).

Regarding the most important consideration of this inquiry, the record here does not support a finding that TFO Williams acted to exploit an illegal situation or that the assumed

3

invalid seizure was flagrant. First, the Court concurs in Judge Rush's conclusion that at the time of the assumed invalid seizure, TFO Williams had sufficient information to establish probable cause to obtain a warrant for the search and seizure of the phone. Further, TFO Williams was concerned about the risk of evidence on Defendant's phone being destroyed after his conversation with K.B. In particular, while certain evidence was preserved on the account used by TFO Williams to pose as a fourteen-year-old Willis, Defendant's phone may have independently linked Defendant to the user account responsible for emailing the Willis account.

Also weighing against an inference of flagrant misconduct, the Court finds no indication that information gained by the assumed invalid seizure prompted TFO Williams to seek consent to search. Indeed, TFO Williams testified that upon delivery of the phone by K.B., the phone was already in the "off" position, was placed in an envelope and remained in the "off" position until during the interview with Defendant when the question of consent was raised. TFO Williams testified that the only other action he took with the phone prior to Defendant's consent was to remove the battery to locate the phone's serial number, which he reported was standard protocol. TFO Williams also testified that had Defendant withheld consent, no further action with the phone would have been taken until either consent or a search warrant had been successfully obtained. Moreover, TFO Williams' statement to Defendant, advising him of the option to revoke consent "at any time," and providing Defendant his card, do not support an inference of flagrant misconduct on the part of law enforcement in seizing Defendant's phone. *See United States v. Thomas*, 83 F.3d 259, 260 (8th Cir. 1996) (that the defendant was made specifically aware of his right to refuse consent is a strong indicator that the officer was not attempting to exploit an illegal situation); *Ramos*, 42 F.3d at 1164 (same).

Consequently, the Court concludes that even if the seizure of the cellphone was in violation of the Fourth Amendment, Defendant's voluntary consent to search was an intervening independent act of free will that purged any taint from the seizure.

**B. Defendant's Post-*Miranda* Statements**

Finally, the Court adopts Judge Rush's conclusion that Defendant's post-*Miranda* statements were a product of an independent source and therefore need not be suppressed.

4

## Conclusion

Accordingly, it is hereby

ORDERED that the Report and Recommendation of Magistrate Judge David P. Rush (doc. 37), except as modified herein, is ADOPTED. It is further

ORDERED that Defendant Jeremiah Shane Talbott's objections (docs 38) are OVERRULED. It is further

ORDERED that Defendant Jeremiah Shane Talbott's Motion to Suppress (doc. 27) is DENIED.

s/ Roseann A. Ketchmark<br>
ROSEANN A. KETCHMARK, JUDGE<br>
UNITED STATES DISTRICT COURT

DATED: March 4, 2016